UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

WALKME LTD.,                                     :

              Plaintiff,               :     **COMPLAINT**

    -against-                                 :     18 CV_____(    )

PENDO.IO, INC. (d/b/a PENDO),          :

            Defendant.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Plaintiff WALKME LTD. ("Plaintiff" or "WalkMe"), for its complaint against Defendant PENDO.IO, INC. (d/b/a PENDO) ("Defendant" or "Pendo"), by its undersigned counsel, alleges as follows:

## NATURE OF THE ACTION

1.  This is a civil action for injunctive relief and damages for infringement of United States Patent No. 9,922,008 ("the '008 patent," Exhibit A) under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

## PARTIES

2.  Plaintiff WalkMe Ltd. is a company organized under the laws of Israel with its principal place of business at 3 Kremenetski Street, 2nd Floor, Tel Aviv, 6789903 Israel. Plaintiff's wholly-owned U.S.-based subsidiary, WalkMe, Inc., maintains a corporate office in this District, located at 245 Fifth Avenue, Suite 1501, New York, New York 10016.

3.  Upon information and belief, Defendant Pendo is a corporation organized under the laws of Delaware, having its principal place of business at 150 Fayetteville Street, Raleigh,

North Carolina 27601, and maintaining a corporate office in this District, located at 215 Park

Avenue South, New York, New York 10003.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction over the subject matter of this action pursuant

to 28 U.S.C. §§ 1331, 1338(a), and Title 35 of the United States Code.

5.      This Court has personal jurisdiction over Defendant because, on information and

belief, Defendant continuously and systematically transacts business within the State of New

York; owns, uses or possesses real property situated within the State of New York; has committed

acts of patent infringement within the State of New York; has committed acts of patent

infringement causing injury to Plaintiff within the State of New York; and/or has purposefully

availed itself of the benefits and protections of New York laws such that it should reasonably

anticipate being subjected to the district court's jurisdiction.

6.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c), and

1400(b), because on information and belief, Defendant has committed acts of infringement in

this District and has a regular and established place of business in this District.

## WALKME'S '008 PATENT AND WEBSITE TUTORIALS

7.      On March 20, 2018 the United States Patent and Trademark Office duly and

legally issued the '008 patent, entitled "Calling Scripts Based Tutorials."  A true and correct

copy of the '008 patent is attached as Exhibit A.

8.      Plaintiff is the assignee of the '008 patent.

9.      WalkMe was founded in 2011 as a company developing a computer system

guidance and navigation tool.  WalkMe is a pioneer of the Digital Adoption Platform ("DAP"),

2

which simplifies the user experience by using, for example, system guidance capabilities designed to drive users to adopt digital systems.

10.     The DAP walks users of computer systems through the most efficient and tailored route, and simplifies the user experience without making changes to the underlying system.

11.     End users of WalkMe's system guidance tools can include a company's employees or customers that require training on a computer system's features and functionality, and who may not know, for example, that there are alternative options within a given system to achieve their desired goal.  The DAP is designed to place strategic system guidance information in the context of the immediate user experience.

12.     WalkMe's DAP system guidance technology adds a layer on top of an existing website or platform.  Within this layer, WalkMe's tools such as "Walk-Thrus," "Launchers," and "ShoutOuts" guide system users with dynamic step-by-step instructions, or tutorial sessions.

13.     The '008 patent is directed to valuable and innovative website tutorial technology. The invention described and claimed in the '008 patent was developed to solve problems encountered with prior art "electronic help" systems intended to assist users to navigate computer software applications and "provide[ ] instructions for accomplishing a desired task or overcoming a problem."  (Ex. A, Col. 1:34-42.)  The '008 patent specification explains the functional limitations of prior art electronic help systems and how the claimed invention generates a dynamically adaptable website tutorial that solves these shortcomings.  (*See id.*, Col. 1:20-46; Col. 4:35-65.)

14.     For example, the '008 patent explains that "existing computer software applications utilize a graphical user interface (GUI) for retrieving information and providing commands," and that GUIs typically incorporate graphical elements (icons, drop down menus,

check boxes, hyperlinks, toolbars, dialog boxes, etc.) that a user selects to employ the functionality of the application.  (Ex. A, Col. 1:20-25.)  Because GUIs "can be complex and confusing," particularly for "computer software applications [that] propose a large number of functionalities and advanced functionalities," there is a substantial market need for software systems that can assist users to navigate in a GUI and perform desired actions.  (*Id.*, Col. 1:26-33.)

15.     Prior to the '008 patent, one known way of assisting "a user to navigate in a GUI and perform desired actions" was "to provide documentation of the GUI elements," sometimes referred to as "electronic help."  (Ex. A, Col. 1:34-37.)  The '008 patent explains that prior art electronic help documentation typically "provide[d] instructions for accomplishing a desired task or overcoming a problem," and that such "instructions often describe GUI elements required to carry out the instructions."  (*Id*., Col. 1:41-43.)  But, the '008 patent further explains that prior art methods employing electronic help documentation were problematic, because they were unable to adapt to modifications.  For example, "[u]pon modifications of the application and/or the GUI—its documentation can become irrelevant, inaccurate and/or incomplete."  (*Id.*, Col. 1:44-46; *see id.*, Col. 4:41-58.)

16.     The '008 patent inventors developed an innovative method and system for creating a dynamically adaptable website tutorial that addressed these problems and improved upon the prior art.  For example, the '008 patent describes and claims a dynamically adaptable tutorial session that "enables guiding a user through a sequence of actions in a website without depending on a specific layout of the website."  (Ex. A, Col. 4:59-63.)  "In such a manner, the dynamically adaptable tutorial is substantially indifferent to webpage layout and/or browser effect," in contrast to the prior art.  (*Id.*, Col. 4:64-66.)

4

17.     The '008 patent claims recite a novel series and combination of steps or elements for creating this innovative dynamically adaptable website tutorial.

## PENDO'S INFRINGING "WALKTHROUGH" TUTORIALS

18.     Pendo sells and markets various user "Guides" for computer software applications and programs.  (*See* Ex. B.)  Pendo offers four different guide types: (1) Tooltip; (2) Lightbox; (3) Banner; and (4) Walkthrough.  (*See id.*)

19.     Pendo describes its Walkthrough guide as "a grouping of" the Tooltip, Lightbox, and Banner guide types.  (*See* Ex. B.)  According to Pendo's "Guide Creation" help center information page, Pendo's Walkthroughs "are often used for user onboarding.  If you have a workflow that users are struggling with, you could build a walkthrough to help a user understand the process or accomplish the task."  (*Id.*)

20.     Pendo markets its Walkthrough guide as designed to "Engage and Educate Users."  (Ex. C.)  Walkthrough literature available on Pendo's website states, for example: "A great way to teach users about your product is by using in-app walkthroughs to show them step-by-step how to complete tasks.  Pendo lets you bring together any combination of in-app guides to construct onboarding and training flows."  (*Id.*)  Pendo's promotional materials further describe the Walkthrough guide as follows:



**Guide Users Through Significant Application Changes**

Most apps go through many significant changes as product teams add new features, improve usability, and streamline or integrate different products. These changes may each be designed with the goal of improving the product experience, but they can also leave users in the dark.

In-App walkthroughs show users what has changed in the product, and guide them to get the most value from new or improved product features and user experience changes.

(*Id.*)

21.     A blog post published on Pendo's website, entitled: "The State of Walkthroughs in Pendo," defines a Walkthrough as "a multi-step in-application guide that 'walks' the user step-

by-step through a particular process in an application," and describes Walkthroughs as "most heavily used for training and user onboarding."  (Ex. D.)

22.     Pendo also markets and offers "Web-based Mobile guides," which allow its customers to "enable guides for web-based mobile environments quickly and easily."  This feature allows Pendo users editing a guide feature to select either "Show on all devices," including mobile phones, or  "Show on mobile phones only."

23.     Pendo's Walkthrough guides directly compete with WalkMe's website tutorial products and features described and identified above (*see* Paragraphs 9-12).

24.     Pendo's main page (www.pendo.io) allows members of the general consuming public to "Get A Demo" of its product offerings, as shown below (blue arrow supplied):



25.     Upon selecting the "Get A Demo" feature, Pendo website users are brought to a webpage that directs them to enter information in order to schedule a "product tour" and/or "Custom Demo," as shown below (blue arrows supplied).  This page allows users to specify whether they are "interested in Pendo" for "Web" or "Mobile" product services, or both.



26.     Upon information and belief, Pendo knows that its Walkthrough guides infringe the '008 patent.

27.     Pendo has been given actual notice of its infringement of the '008 patents, through a letter from WalkMe's counsel addressed to Pendo's Chief Executive Officer, Mr. Todd Olson, dated July 24, 2018, sent by overnight mail to Pendo's headquarters and by email to Mr. Olson.  This letter notified Pendo of the '008 patent and WalkMe's belief that Pendo's Walkthrough guides infringe the '008 patent.

28.     WalkMe has suffered, and will suffer, irreparable injury unless Pendo is enjoined from willfully infringing, willfully inducing infringement of, and/or willfully contributing to the infringement of the '008 patent.

29.     WalkMe has suffered, and will suffer, damages from Pendo's willful infringement, willful inducement of infringement, and/or willful contributory infringement.

### FIRST CAUSE OF ACTION
### (Infringement of the '008 Patent)

30.     WalkMe incorporates and re-alleges Paragraphs 1 through 29 above as if fully set forth and stated herein.

31.     The '008 patent is valid and enforceable.

32.     In violation of 35 U.S.C. § 271, Pendo has infringed and continues to infringe the '008 patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling in this judicial district and elsewhere in the United States, its Walkthrough guides.

33.     Pendo's Walkthrough guides fall within the scope, and practice each and every limitation, of at least independent claims 1, 9 and 17 of the '008 patent, and one or more dependent claims therefrom, including at least claims 2-8, 12, 13 and 15.

34.     For example, Pendo's Walkthrough guides are made, sold, and used to create a dynamically adaptable step-by-step website tutorial.  (*See* Exs. C, D.)

35.     Pendo's Walkthrough guides allow for selecting a website comprising at least one web document having a plurality of separate GUI elements each adapted for receiving an input from a browsing user, as shown below, for example:



36.     Pendo's Walkthrough guides allow for instructing a browser to present at least one web document in parallel to a user interface for defining a tutorial session of a multistep process related to the selected website and receiving from that user interface a plurality of descriptive elements which define the tutorial session.  As shown below, for example, the web browser displays the website (right) together with the user interface for generating the website tutorial (left).  As also shown below, for example, the user interface further includes a plurality of descriptive elements defining a multistep tutorial session (Step 1, Step 2, Step 3, etc.)



37.     In addition, each descriptive element of the Walkthrough user interface has a plurality of displayed features (e.g., width, height, position), as shown below, for example:



38.     The Walkthrough user interface is also used for associating each one of the plurality of descriptive elements with one of a plurality of separate GUI elements in the web document and with a condition.  Shown below (top image), for example, is the selection of a GUI element from the webpage (i.e., Star Rating) to be associated with a descriptive element of the Walkthrough user interface.  Also shown below (bottom image), for example, are options for setting a condition to be associated with a descriptive element of the Walkthrough user interface (i.e., Transition type):



39.     Pendo Walkthroughs further allow for identifying a plurality of GUI element features of the plurality of separate GUI elements.  As shown below, GUI features of the selected GUI elements are identified, in one example, by the element type (i.e, H3) and the element's text (i.e., "Network Activities Graph title sub-title")





40.     The Pendo Walkthroughs automatically generate a plurality of calling scripts,

according to a respective condition and one of the plurality of separate GUI elements, as shown

below, for example:

41.     Furthermore, the Pendo Walkthrough embeds the plurality of calling scripts into a code for creating said at least one web document for sequentially presenting the plurality of descriptive elements on top of the web document, as shown below, for example:



42.     Moreover, the plurality of calling scripts in the Pendo Walkthrough are sequentially triggered by the web browser user when a respective condition is met upon appropriate user interaction with one of the plurality of separate GUI elements.  As shown below, for example, user selection of the "UI Elements" GUI element, as instructed by the tooltip display, triggers the next step in the tutorial sequence:

43.     In a Pendo Walkthrough, each displayed feature of a descriptive element in the user interface is automatically determined according to a GUI element feature of the webpage. As a result, the display of the plurality of descriptive elements in the user interface corresponds

with the plurality of separate GUI elements.  As shown below, for example, the location of the "tooltip" balloon displayed in the tutorial is automatically determined based on actual position of associated HTML elements of the user interface.



44.     On information and belief, Pendo, without authority, has actively induced and continues to actively induce infringement of at least claims 1-9, 12, 13, 15 and 17 of the '008 patent under 35 U.S.C. § 271(b).  Pendo has, among other things, instructed others to use Walkthrough guide products within the United States that infringe at least claims 1-9, 12, 13, 15 and 17 of the '008 patent.

45.     On information and belief, Pendo is aware of its infringement of the '008 patent and has had a specific intent to infringe and encourage others to infringe the '008 patent.

46.     On information and belief, Pendo has contacted and solicited potential customers regarding its Walkthrough guide products, including through the "Get A Demo" feature on its website, with an intent to encourage those potential customers to purchase or use the product. On information and belief, Pendo's customers have purchased and used the Walkthrough guide to develop infringing website tutorials.

47.     On information and belief, Pendo directly communicates with consumers with the intent to have them use the Walkthrough guide to generate infringing website tutorials.  Pendo was aware of and knew about WalkMe's '008 patent no later than July 25, 2018, the date WalkMe's counsel caused to be delivered correspondence to Pendo's headquarters and its CEO, notifying Pendo of its infringement of the '008 patent.  Pendo therefore knowingly induced infringement and possessed specific intent to encourage another's infringement of WalkMe's '008 patent.

48.     On information and belief, Pendo, without authority, has contributorily infringed and continues to contributorily infringe, at least claims 1-9, 12, 13, 15 and 17 of the '008 patent under 35 U.S.C. § 271(c), by making, offering to sell and/or selling within the United States, and/or importing into the United States, one or more components of the Walkthrough guide product covered by the '008 patent.  Such components constitute a material part of WalkMe's invention.  Pendo was aware of and knew about WalkMe's patented invention no later than July 25, 2018, the date WalkMe's counsel caused correspondence to be delivered to Pendo regarding Pendo's infringement of the '008 patent.

49.     Pendo's Walkthrough guide product and its constituent components have no substantial non-infringing use.  Pendo promotes and describes the Walkthrough guides "as show[ing] [users] step-by-step how to complete tasks" (Ex. C), and as "a multi-step in-application guide that 'walks' the user step-by-step through a particular process in an application."  (Ex. D.)  Pendo knows that its Walthrough guide, and any associated components, are made or especially adapted for use in connection with the creation of infringing website tutorials, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

14

50.     On information and belief, Pendo had actual notice of the '008 patent before the filing of this complaint, but no later than July 25, 2018.  On information and belief, Pendo has nevertheless directly and indirectly infringed the '008 patent, despite a high likelihood that its actions constitute infringement of the '008 patent.  Further, Pendo's actions were egregious in that it acted deliberately, in bad-faith, and was consciously wrongful in its actions.  Accordingly, upon information and belief, Pendo's infringement has been and continues to be willful.

51.     WalkMe has suffered, and will suffer, irreparable injury unless Pendo is enjoined from infringing, inducing infringement of, and/or contributing to the infringement of the '008 patent.

52.     WalkMe has no adequate remedy at law.

53.     WalkMe has suffered, and will suffer, damages as a result of Pendo's infringement, inducing infringement, and/or contributory infringement of the '008 patent.

## JURY TRIAL DEMAND

54.     WalkMe, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable.

## PRAYER FOR RELIEF

55.     WHEREFORE, WalkMe respectfully requests that the Court enter the following relief:

    a.      A judgment that Pendo has infringed, directly or indirectly, the '008 patent;

    b.      A judgment that Pendo's infringement of the '008 patent is willful;

    c.      A permanent injunction prohibiting Pendo, its officers, employees, agents, servants, attorneys, successors, and assigns, and all others in active concert or

participation with them or under their authority, from making, using, offering for sale, selling, and/or importing into the United States productds or methods that directly or indirectly infringe the '008 patent;

      d.    An award of damages to compensate WalkMe for Pendo's infringement of the '008 patent, including, but not limited to, damages and/or other monetary relief (including enhanced damages) pursuant to 35 U.S.C. § 284;

      e.    A finding that this case is exceptional pursuant to 35 U.S.C. § 285, and an award of WalkMe's costs, reasonable attorneys' fees, expenses, and such other relief as the Court deems just and proper; and

      f.    Any further relief that this Court deems just and proper.

Dated: New York, New York
       August 22, 2018

                    DLA PIPER LLP (US)

                    By:  */s/ Leon Medzhibovsky* _____
                         Leon Medzhibovsky
                         leon.medzhibovsky@dlapiper.com
                         Matthew Ganas
                         matt.ganas@dlapiper.com
                         1251 Avenue of the Americas
                         New York, New York 10020-1104
                         Telephone (212) 335-4500
                         Facsimile (212) 335-4501

                         *Attorneys for Plaintiff WalkMe Ltd.*