UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
                                       :
WALKME LTD.,                           :
                      Plaintiff,       :        18cv7654 (DLC)
                                       :
           -v-                         :        CORRECTED OPINION
                                       :          AND ORDER[1]
PENDO.IO, INC.,                        :
                                       :
                      Defendant.       :
                                       :
--------------------------------------X

APPEARANCES

For the Plaintiff:
Leon Medzhibovsky
Matthew Ganas
DLA Piper LLP
1251 Avenue of the Americas
New York, New York 10020

For the Defendant:
Eric Hui-chieh Huang
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

Claude M. Stern
Cameron D. Clawson
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, Fifth Floor
Redwood Shores, California 94065

David Elihu
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017

_____

[1] An Opinion and Order of April 2, 2019 incorrectly referred to U.S. Patent No. 9,022,008. The correct patent number is 9,922,008. This Corrected Opinion and Order is otherwise identical in all respects.

1

DENISE COTE, District Judge:

On October 30, 2018, defendant Pendo.io, Inc. ("Pendo") moved to dismiss this patent infringement action on the ground that the patent claims patent-ineligible subject matter. See 35 U.S.C. § 101 ("Section 101"). For the reasons that follow, the defendant's motion to dismiss is granted.

## Background

On August 22, 2018, plaintiff WalkMe Ltd. ("WalkMe") brought suit against Pendo on the ground that Pendo's "Walkthough" guides allegedly infringe WalkMe's patent No. 9,922,008 (the "'008 Patent"). WalkMe's complaint alleges that it is a pioneer of the "Digital Adoption Platform" ("DAP"), which "simplifies the user experience by using, for example, system guidance capabilities designed to drive users to adopt digital systems." The DAP "walks users of computer systems through the most efficient and tailored route and simplifies the user experience without making changes to the underlying system."

WalkMe explains that the '008 Patent is designed to address problems with electronic help systems -- that is, "systems intended to assist users to navigate computer software applications and provide instructions for accomplishing a desired task or overcoming a problem." An example of these instructions, which are sometimes referred to as descriptive

elements, is the text within a bubble that appears when a cursor
hovers over a location on a webpage.  Each descriptive element
is associated with a particular graphical user interface or GUI
element, such as a drop down menu.  If the GUI is changed after
the help instructions are written, for instance through use of a
different browser or the redesign of the webpage, then the
instructions may no longer accurately describe the GUI element
or be associated with it.  Instead of needing to manually alter
the instructions, the Patent envisions a method for dynamically
adapting the instructions or descriptive elements.  Through the
invention, the documentation or descriptive elements would be
"indifferent to webpage layout changes and/or browser effect."
'008 Patent at Col. 4.  The process of linking the instructions
to the GUI elements is through the creation of "calling
scripts."  Through calling scripts, the descriptive element and
its respective GUI element will be linked to each other
regardless of the layout of the webpage or the use of different
web browsers.  The calling scripts also direct a web browser to
display descriptive elements when certain conditions are met,
such as when the user opens the web page or clicks a "next"
button.

    WalkMe expects that its invention will be of great
assistance to those creating "tutorials" for websites, that is,
those creating the instructions that assist web page users in

their interactions with the GUI elements, particularly when the tutorial creators are not sophisticated software developers. The person creating the tutorial may know how she wants the tutorial to function, but not how to build it do so.

Claim 1 of the '008 Patent is a method claim, specifically "a method of creating a dynamically adaptable tutorial." The generation of a "dynamically adaptable tutorial," which WalkMe describes in its opposition brief as "the sequential display of descriptive elements associated with website GUI elements upon triggering of selected conditions in a multi-step website navigation process," is the desired result of the invention. The "method" involves the association of descriptive elements with GUI elements using a generic "user interface." Once the association is made, the claimed method calls for "automatically generating" computer code -- "calling scripts" -- which will present the descriptive elements with the associated GUI when certain user-determined conditions are met. The features of these descriptive elements are "automatically determined" by the features of the associated GUI elements.

Pendo offers four different types of user guides for software applications. WalkMe alleges that one type of Pendo guides -- Pendo's "Walkthrough" guides -- infringes the '008 Patent. A Walkthrough guide, as described in WalkMe's complaint, is "a multi-step in-application guide that 'walks'

4

the user step-by-step through a particular process in an application . . . ."  WalkMe alleges that Pendo's "Walkthrough" guides directly compete with WalkMe's dynamically adaptable tutorials and infringe the '008 Patent.

The '008 Patent

The '008 Patent is entitled "Calling Scripts Based Tutorials."  It comprises three independent claims and fourteen dependent claims.  The application for the patent was originally filed with the United States Patent and Trademark Office ("PTO") by WalkMe in April 2014, claiming priority to a related provisional application filed on October 24, 2011.  After the PTO rejected the application under 35 U.S.C. § 102, the applicant amended the claims to address the patent examiner's objections.  The PTO issued a Notice of Allowance on November 30, 2017, and the Patent was issued on March 20, 2018.  WalkMe is listed as the assignee of the patent.

Claim 1 of the '008 Patent claims, in full:

A method of creating a dynamically adaptable tutorial comprising:

selecting a website comprising at least one web document having a plurality of separate graphical user interface (GUI) elements each adapted for receiving an input from a browsing user;

instructing a browser to present said at least one web document in parallel to a user interface for defining a tutorial session of a multistep process related to said website and receiving from said user interface a plurality of descriptive elements which define said

tutorial session, each having a plurality of
descriptive elements with one of said plurality of
separate GUI elements in said at least one web
document and with a condition;

identifying a plurality of GUI element features of
said plurality of separate GUI elements;

automatically generating a plurality of calling
scripts each according to a respective said condition
and one of said plurality of separate GUI elements;

embedding said plurality of calling scripts into a
code for creating said at least one web document for
sequentially presenting said plurality of descriptive
elements on top of said at least one web document;

wherein said plurality of calling scripts are
sequentially triggered by said browser user when said
respective condition is met upon appropriate user
interaction of said browser user with a respective GUI
element from said plurality of separate GUI elements;
and

wherein each one of said plurality of displayed
features is automatically determined according to said
plurality of GUI element features so that display of
respective said plurality of descriptive elements
display correspond with said plurality of separate GUI
elements.

(Emphasis added.)

Claim 1 is representative of the two other independent

claims of the '008 Patent, Claims 9 and 17.  Claim 9 is

substantially identical to Claim 1 except that, rather than "a

method of creating a dynamically adaptable tutorial, comprising:

[the remainder of the claim]" it claims "a network node for

creating a dynamically adaptable tutorial, comprising: a

computing platform for executing a plurality of instructions

for: [the remainder of the claim]."

Claim 17 is similar to Claims 1 and 9 except that it is directed to presenting rather than generating a dynamically adaptable tutorial.  In its entirety, Claim 17 recites:

A method of presenting a dynamically adaptable tutorial, comprising:

Loading to a browser a code of a web document having a plurality of calling scripts each associated with a condition and one of a plurality of descriptive elements each having a plurality of displayed features;

sequentially presenting said plurality of descriptive elements to a browser user on top of said web document, each one of said plurality of descriptive elements is presented in proximity to one of said plurality of separate GUI elements for walking a browser user accessing said web document through a multistep process while said browser user browses said web document;

wherein each one of said plurality of displayed features is automatically determined according to a plurality of GUI element features of said plurality of separate GUI elements, so that display of respective said plurality of descriptive elements correspond with said plurality of separate GUI elements; and

wherein said plurality of calling scripts are sequentially triggered by said browser user when said respective condition is met upon appropriate user interaction of said browser user with a respective GUI element from said plurality of separate GUI elements.

WalkMe's complaint also asserts that Pendo's products infringe ten of the dependent claims of the '008 Patent.  These are Claims 2-8, 12, 13, and 15.  These claims limit Claims 1 and 9.

On October 30, 2018, Pendo moved to dismiss WalkMe's claim for patent infringement on the ground that the '008 Patent is

invalid because it is directed to an abstract idea.  That motion became fully submitted on December 4, 2018.

## Discussion

"Whether a claim is drawn to patent-eligible subject matter under § 101 is a threshold inquiry, and any claim of an application failing the requirements of § 101 must be rejected even if it meets all of the other legal requirements of patentability."  In re Bilski, 545 F.3d 943, 950 (Fed. Cir. 2008) (hereinafter "Bilski I").  A patent is presumed to be valid by statute.  See 35 U.S.C. § 282.  The party challenging the validity of a patent bears the burden of proving invalidity by clear and convincing evidence.  See, e.g., Pfizer, Inc. v. Apotex, Inc., 480 F.3d 1348, 1359 (Fed. Cir. 2007).  The question of whether a patent is invalid under Section 101 is an "issue of law."  Bilski I, 545 F.3d at 951.

Section 101 provides that a patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101.  It is well-established that abstract ideas as well as the laws of nature and natural phenomena are not patentable under § 101.  Alice Corp. Pty. Ltd. v. CLS Bank Intern., 134 S. Ct. 2347, 2354 (2014); Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1334 (Fed. Cir. 2016).  The Supreme Court has promulgated a two-step "framework" for distinguishing patents that claim

abstract ideas "from those that claim patent-eligible
applications of those concepts." Alice, 822 F.3d at 2355.
First, courts must "determine whether the claims at issue are
directed to . . . [a] patent-ineligible concept[]." Id. If
not, the inquiry ends, as the claims are patent eligible. If
the claims are directed to a patent-ineligible concept, a court
must then look for an "inventive concept," -- "i.e., an element
or combination of elements that is sufficient to ensure that the
patent in practice amounts to significantly more than a patent
upon the ineligible concept itself." Id. (citation omitted).[2]

In the context of computer software, step one requires a
court to "articulate with specificity what the claims are
directed to, and ask whether the claims are directed to an
improvement to computer functionality versus being directed to
an abstract idea." Visual Memory LLC v. NVIDIA Corp., 867 F.3d
1253, 1258 (Fed. Cir. 2017) (citation omitted). "In cases
involving software innovations, this inquiry often turns on

_____

[2] WalkMe notes that, under Alice step two, "[w]hether the claim
elements or the claimed combination are well-understood,
routine, [and] conventional is a question of fact." Aatrix
Software, Inc. v. Green Shades Software, Inc., 882 F.3d 1121,
1128 (Fed. Cir. 2018). Where there is such a factual dispute, a
Section 101 issue cannot be resolved on the pleadings as a
matter of law. Berkheimer v. HP Inc., 881 F.3d 1360, 1368 (Fed.
Cir. 2018). WalkMe contends that there are genuine questions of
fact as to eligibility under Step Two in view of the
specification's and complaint's discussion of the prior art.
Not so. The '008 Patent does not describe any "unconventional"
non-abstract elements, and WalkMe has not identified any.

9

whether the claims focus on the specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." Ancora Techs., Inc. v. HTC Am., Inc., 908 F.3d 1343, 1347 (Fed. Cir. 2018) (citation omitted). An asserted improvement in computer functionality must have "the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it." Id. at 1349 (citation omitted). "[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention. Stating an abstract idea while adding the words 'apply it' is not enough for patent eligibility." Alice, 134 S. Ct. at 2358. "[C]laims are not saved from abstraction merely because they recite components more specific than a generic computer." BSG Tech LLC v. Buyseasons, Inc., 899 F.3d 1281, 1286 (Fed. Cir. 2018).

I.  Claim 1

    A. Abstract Idea

    Claim 1, "[s]tripped of excess verbiage," Intellectual Ventures I LLC v. Capital One Fin. Corp., 850 F.3d 1332, 1339 (Fed. Cir. 2017), lacks "the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it." Ancora, 908 F.3d at 1349 (citation omitted). "[M]uch of the confusion in abstract idea law after Alice is in

the proper categorization of what a claim is directed to."
Gust, Inc. v. Alphacap Ventures, LLC, 905 F.3d 1321, 1330 (Fed.
Cir. 2018).  The Federal Circuit has "warned against abstracting
the claims at too high a level."  Smart Systems Innovations, LLC
v. Chicago Transit Auth., 873 F.3d 1364, 1371 n.8 (Fed. Cir.
2017).

The '008 Patent describes an abstract idea that is
ineligible for patent protection.  The steps asserted in the
Patent that constitute the "method" of the invention lack the
specificity required to establish patentability.  The core
feature of the patent is the connection between instructions and
graphical features of a webpage.  This connection is made
through the creation of calling scripts.  The claim does not
disclose, however, a method for creating the calling scripts,
much less explain how the calling scripts are to be
"automatically generated."  The patent essentially claims any
method of using a computer to "automatically generate" the
dynamic linking of instructions with website features.

Boiled down to its essence, the '008 Patent claims the
automatic generation of a computer code that creates an
association between two objects.  This is not an improvement in
computer functionality, but rather a way of using a computer as
a tool.  "The recitation of a generic computer," however,

"cannot transform a patent-ineligible abstract idea into a patent-eligible invention."  <u>Alice</u>, 135 S. Ct. at 2358.

These deficiencies in the invention become clear when one considers the specific improvement in computer functionality claimed by the Patent.  The asserted improvement in functionality is twofold.  First, WalkMe asserts in its opposition brief that the invention aids a user of its invention who is not proficient in computer programming by "automatically generating" calling scripts.  But there is no explanation of how those calling scripts are automatically generated.  It merely presents the idea of using a computer to perform such a function.

Second, WalkMe contends that the claimed invention saves a user of its invention from having to regularly update instructional materials because the features of the display elements, such as size or location, are "automatically determined."  Again, the value of the invention is, in essence, the automatic performance of certain tasks by a computer.  The '008 Patent thus merely claims the desired result -- generation of a dynamically adaptable tutorial -- and specifies no more than that it will be achieved "automatically" by a computer.

It is worth noting that the claimed invention is extraordinarily broad.  It does not provide any significant limitation on the nature of the association between descriptive

elements and GUI elements.  The corresponding features "may

include graphical features such as location and/or size,

temporal features, such as timing and/or duration, and/or sound

features, such as volume . . . ."  Graphical features may

include "location, shape, colors, type, position, theme and

direction."  This broad claim preempts virtually any method of

associating the features of descriptive and graphical elements

on a webpage.

> The Supreme Court has not established a
> definitive rule to determine what constitutes an
> 'abstract idea' sufficient to satisfy the first step
> of the Mayo/Alice inquiry.  Rather, both [the Federal
> Circuit] and the Supreme Court have found it
> sufficient to compare claims at issue to those claims
> already found to be directed to an abstract idea in
> previous cases.

Enfish, 822 F.3d at 1334 (citation omitted).  The patent claims

at issue in the cases on which WalkMe relies are distinguishable

and, if anything, illustrate the ineligibility of the '008

Patent.

WalkMe relies heavily on the recent case of Data Engine

Technologies LLC v. Google LLC, 906 F.3d 999 (Fed. Cir. 2018).

In that case, the Federal Circuit held that claims to "a

specific method for navigating through three-dimensional

electronic spreadsheets" were not directed to an abstract idea.

Id. at 1008.  The upheld claim recited a user interface for

three-dimensional spreadsheets that allowed a user to navigate

between multiple spreadsheet pages by clicking on page identifiers displayed as notebook tabs.  <u>Id.</u> at 1005.  The court held that the method provided "a specific solution to then-existing technological problems in computers and prior art electronic spreadsheets."  <u>Id.</u> at 1008.  The claim recited "a specific structure (i.e., notebook tabs) within a particular spreadsheet display that performs a specific function (i.e., navigating within a three-dimensional spreadsheet)."  <u>Id.</u> at 1011.  The Federal Circuit specifically noted, however, that

> [t]he claimed method does not recite the idea of
> navigating through spreadsheet pages using buttons or
> a generic method of labeling and organizing
> spreadsheets.  Rather, the claims require a specific
> user interface and implementation for navigating
> complex three-dimensional spreadsheets using
> techniques unique to computers.

<u>Id.</u> at 1008-09.  The '008 Patent contains no such specificity.  Rather, it is directed only at the desired result -- the automatic generation of computer code to associate two objects when certain conditions are met.

The '008 Patent is more closely analogous to another claim found to be ineligible in <u>Data Engine</u>.  That claim "generically recite[d] 'associating each of the cell matrices with a user-settable page identifier' and d[id] not recite the specific implementation of a notebook tab interface."  <u>Id.</u> at 1012.  Here, the '008 Patent generically recites using a computer to associate a descriptive element with a GUI element.  It does not

14

provide any guidance on how to achieve that association other than referring vaguely to computer code it labels "calling scripts."

The patents at issue in <u>Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.</u>, 880 F.3d 1356 (Fed. Cir. 2018), are also distinguishable. Those patents involved an improved user interface to allow users to more quickly access data and functions on an electronic device with a small screen, such as a mobile telephone. <u>Id.</u> at 1359. Specifically:

> An application summary window displays a limited list of common functions and commonly accessed stored data which itself can be reached directly from the main menu listing some or all applications. The application summary window can be reached in two steps: first, launch a main view which shows various applications; then, launch the appropriate summary window for the application of interest.

<u>Id.</u> (citation omitted). The <u>Core Wireless</u> patents were thus "directed to an improved user interface for computing devices," rather than "the abstract idea of an index." <u>Id.</u> at 1362. The claims disclosed "a specific manner of displaying a limited set of information to the user, rather than using conventional user interface methods to display a generic index on a computer." <u>Id.</u> at 1363. The '008 Patent does not describe any specific user interface. It gives virtually no guidance on how to link descriptive elements to GUI elements other than through what it terms calling scripts, or how to automatically generate the

calling scripts that are theoretically responsible for the linkage.

Recently, in Ancora Technologies the Federal Circuit upheld a patent that claims "methods of limiting a computer's running of software not authorized for that computer to run." 908 F.3d at 1344. More specifically, the Ancora patent claims a method that "calls for storage of a license record in a 'verification structure' created in a portion of BIOS memory that, unlike the ROM of the BIOS, 'may be erased or modified' . . . ." Id. at 1345. The Federal Circuit held that "the claimed advance is a concrete assignment of specified functions among a computer's components to improve computer security . . . ." Id. at 1344. The patent described a new use for a commonplace computer component -- BIOS memory -- to solve an existing problem in computer functionality. "Using BIOS memory, rather than other memory in the computer, improves computer security . . . because successfully hacking BIOS memory . . . is much harder than hacking the memory used by the prior art to store license-verification information." Id. at 1345. The '008 Patent, on the other hand, simply recites a generic "user interface" -- which can take virtually any form -- and the desired result. It does not require the use of any particular component of a computer in an innovative way or an alteration in the way computers are used.

Finally, WalkMe relies upon the Federal Circuit's nonprecedential opinion in Trading Technologies International, Inc. v. CQG, Inc., 675 Fed. Appx. 1001 (Fed. Cir. 2017), which affirmed the district court's holding that the challenged patent claimed patent-eligible subject matter.[3] The challenged patents in that case were directed to "a method and system for reducing the time it takes for a trader to place a trade when electronically trading on an exchange, thus increasing the likelihood that the trader will have orders filled at desirable prices and quantities." Id. at 1003. The patents described "a trading system in which a graphical user interface displays the market depth of a commodity traded in a market, including a dynamic display for a plurality of bids and for a plurality of asks in the market for the commodity and a static display of prices corresponding to the plurality of bids and asks." Id. (citation omitted). The Federal Circuit agreed with the district court that the claims "require a specific, structured graphical user interface paired with a prescribed functionality directly related to the graphical user interface's structure that is addressed to and resolves a specifically identified

---

[3] This opinion has been designated by the Federal Circuit as nonprecedential. Parties are not prohibited from citing nonprecedential decisions issued after January 1, 2007. See Fed. R. App. P. 32.1; U.S. Ct. of App. Fed. Cir. Rule 32.1. This opinion as well as the opinion of the district court are considered only for their persuasive value.

problem in the prior state of the art." Id. at 1004.  As
described above, the '008 Patent claims virtually any user
interface without limitation.  It does not "recite more than
setting, displaying, and selecting data or information that is
visible on the graphical user interface device." Id. (citation
omitted).

Because the '008 Patent is directed to an abstract idea,
the Court must "consider the elements of each claim both
individually and as an ordered combination to determine whether
the additional elements transform the nature of the claim into a
patent-eligible application." Alice 134 S. Ct. at 2355. "This
is the search for an 'inventive concept' -- something sufficient
to ensure that the claim amounts to 'significantly more' than
the abstract idea itself." Finjan, Inc. v. Blue Coat Sys.,
Inc., 879 F.3d 1299, 1303 (Fed. Cir. 2018) (citation omitted).

B. Inventive Concept

The '008 Patent lacks any inventive concept that could save
it from invalidity.  As described above, the implementation of
the abstract idea using "generic computer technology" does not
constitute an "inventive concept" so as to render an otherwise
abstract idea patent-eligible.  See Mortgage Grader, Inc. v.
First Choice Loan Servs. Inc., 811 F.3d 1314, 1322 (Fed. Cir.
2016).  Here, the asserted claims involve the creation of a
dynamic linkage between instructions and GUI elements.  It uses

generic computer technologies such as a "network node," a "computing platform," a "website," a "web document," "GUI elements," and a generic "user interface." These generic computer features do not constitute "inventive concepts" as described by the Supreme Court in Alice.

Further, the '008 Patent is not directed at solving a problem that is unique to computers. See DDR Holdings, LLC v. Hotels.com, L.P., 773 F.3d 1245, 1257 (Fed. Cir. 2014). The linkage of instructions to the appropriate location for the user to respond to those instructions or to be enlightened by them is not a computer problem. It is a problem that arises whenever an actor is required to respond to instructions. For instance, does the red tab that reads "sign here" line up with the signature line? While WalkMe envisions a computer program that would link those two features on a webpage, it does not describe an inventive concept that would achieve that goal. The creation of the term "calling script" does not do more than request assistance of a computer to make the linkage a reality.

Another problem that the patent seeks to solve is that, as a computer program is modified or updated, instructional materials for how to use that program may become obsolete. The asserted invention purports to save a user of the invention from having to continually update instructional materials as new versions of the underlying program are released. But again, the

obsolescence of instructional documentation resulting from product changes is not a problem that is unique to computers. The same problem would be experienced by, for example, manufacturers of home appliances who release new versions of their products with an altered consumer interface, thereby rendering prior instructional diagrams obsolete.

WalkMe asserts, however, that repeated revisions can be burdensome and costly. It asserts that its "unique combination of steps and elements" for creating a dynamically adaptable "tutorial" is an inventive concept that is entitled to protection. It asserts that it has recited in specific detail how the proverbial sausage is made. It lists such components as the automatic generation of calling scripts, the embedding of those scripts into a web document, the sequential triggering of the embedded scripts, and the sequential presenting of the desired descriptive elements on top of the modified web document. But, as already explained, there is not enough specificity as to those steps and elements to carry the '008 Patent beyond the realm of describing an idea. The invocation of a wish list of functions, incorporating computer terminology, does not create an invention. While applying a computer to many tasks can certainly reduce burden and cost, what is described here is insufficient to meet the demands of Section 101.

II.  The Remaining Claims

     WalkMe does not make a separate argument as to the patent
eligibility of Claims 9 and 17.  In any event, these claims are
substantially similar to Claim 1, and they suffer from the same
deficiencies.  Claim 9 simply claims a "network node" with
essentially the same limitations as Claim 1.  Claim 17 is
directed to presenting a dynamically adaptable tutorial by
loading the code for the web page, including the calling
scripts, to a web browser.  These claims are patent ineligible
for the same reasons as Claim 1.

     The dependent claims asserted in WalkMe's complaint do not
add significant limitations to Claim 1.  They are still directed
to the abstract idea of generating, maintaining, and
conditionally presenting an association between two objects.

     WalkMe argues that two dependent claims add significantly
more to Claim 1.  It asserts first that Claim 4 calls for the
creation of new calling scripts for each step the user adds to a
tutorial, all without having to modify the code.  Claim 4
purports to limit Claim 1 by "associating between each of said
plurality of descriptive elements and said plurality of calling
scripts without user generated code."  This is merely a
restatement of Claim 1's requirement that the calling script be
"automatically generated," thus saving a user from having to
write the code herself.

WalkMe next asserts that Claim 6 describes a plurality of triggers, each of which requires separate calling scripts. Claim 6 lists several examples of potential calling script triggers, such as "clicking a separate GUI element, clicking an element of a separate GUI element, clicking a next button, typing characters with a keyboard, hovering over a separate GUI element, hovering over an element of a separate GUI element, time period elapsing and web document refreshes, web document redirected." Each of these are commonplace actions performed by users of computers, and do not significantly add to the invention described in Claim 1.

## Conclusion

The '008 Patent claims an abstract idea, which is patent ineligible subject matter under Section 101 of the Patent Act. The dependent claims are invalid as well. Pendo's October 30, 2018 motion to dismiss is granted. The Clerk of Court shall enter judgment for the defendant and close the case.

Dated:      New York, New York
            April 4, 2019

_____
DENISE COTE
United States District Judge